**Fourth Court of Appeals**
San Antonio, Texas



## MEMORANDUM OPINION

No. 04-18-00136-CV

**IN THE INTEREST OF R.L.M.**

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-02182
Honorable Richard Garcia, Associate Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: June 13, 2018

AFFIRMED

Laura C. appeals the trial court's order terminating her parental rights to her young son, R.L.M. Her parental rights were terminated based on (D), (E), (N), (O), (P), and (R) grounds. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P), (R) (West Supp. 2017). On appeal, Laura C. does not contest the statutory grounds for termination but argues only the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in her child's best interest. *See id.* § 161.001(b)(2). We review the legal and factual sufficiency of the evidence to support the trial court's best-interest finding under the standards enunciated in *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). And, in determining whether the child's parent is willing and able to provide the child with a safe environment, a court

should consider the factors set out in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307 (West Supp. 2017). In addition to these statutory factors, in considering the best interest of the child, a court may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Further, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

The evidence at trial consisted of testimony from Angie Steinau, a Department conservatorship caseworker, and Laura C. At the time of trial, R.L.M. was a year and half old.

Steinau testified that prior to trial, Laura C. had had her parental rights terminated to three other children. According to Steinau, the Department received a referral in this case because at the time of R.L.M.'s birth, R.L.M. and Laura C., respectively, tested positive for cocaine and opiates. Steinau also explained there was a family history of substance abuse by both parents. According to Steinau, Laura C. admitted she had had a drug problem for five or six years and her drug of choice was heroin. Laura C. also admitted to using methamphetamines.

Steinau testified that Laura C. knowingly put her unborn child at risk for drug withdrawal, developmental delays, and other health problems by using cocaine and opiates during her pregnancy. Steinau believed Laura C. did this knowingly because of her history. Laura C. had given birth to other children who were born positive for drugs, and Laura C. was aware of the effects those children suffered because of the drugs in their system at birth. With regard to R.L.M., Steinau testified that R.L.M. experienced tremors the first couple of months of his life. For the first year of his life, R.L.M. had to receive occupational therapy and physical therapy. Every three months, R.L.M. sees a developmental specialist. R.L.M. may also need speech therapy.

Steinau testified that when this case first began, Laura C. was living at Haven for Hope, a homeless shelter, and that she currently resides at Haven for Hope. According to Steinau, initially, there was a desire to reunite Laura C. with R.L.M. Laura C. actively engaged in services, and the main goal of her service plan was to address her substance abuse. Steinau testified Laura C. was required to submit to random drug testing by submitting urine and hair follicles. Laura C. was also to complete either an in-patient or out-patient drug program, and attend counseling and a parenting class. Steinau reviewed the service plan with Laura C., and Laura C. understood what she needed to do in order to comply with her service plan. Steinau testified that everything was going fairly well until the Summer of 2017. Laura C. had successfully completed the parenting class and was half-way through the outpatient drug program at Haven for Hope when she relapsed. Steinau testified Laura C. left Haven for Hope and was out of contact with the Department for four or five months. In September 2017, Laura C. re-established contact with Steinau; however, when Laura C. submitted to a hair follicle drug test, she tested positive for methamphetamines and amphetamines. According to Steinau, Laura C. said she had been engaging with people who were not good for her. Laura C. admitted that during the Summer of 2017, she had used methamphetamines.

Steinau testified that during the time Laura C. was not in contact with the Department, she had no visits with R.L.M. Before the Summer of 2017, her last visit with R.L.M. had been May 4, 2017. On November 21, 2017, Laura C. resumed her visits with R.L.M.; however, since November 2017, Laura C. had not attended all of her scheduled visits with R.L.M. According to Steinau, Laura C. attributed her inconsistent visiting with R.L.M. to her having to submit to drug test, her work schedule, or her failure to receive the caseworker's messages. Steinau testified that during the course of the case, Laura C. could have visited R.L.M. sixty to seventy times, but only visited about twenty times. Steinau noted that Laura C. did participate in some visits with R.L.M. in

January 2018, but R.L.M. was upset during the visits. According to Steinau, R.L.M. cried and did not want to be held by Laura C. Although Laura C. brought toys and snacks, R.L.M. did not want to have anything to do with her. Steinau testified R.L.M. has not bonded with Laura C.

Steinau testified Laura C. was asked to submit to hair follicle testing in January 2018, but she refused. According to Steinau, Laura C.'s refusal to submit to drug testing raises doubt about her current drug use. She explained Laura C. has never successfully completed drug treatment, has never demonstrated she was living a drug-free lifestyle, has never successfully completed counseling and has not completed her service plan.

Steinau testified that Laura C. reported attending N.A. meetings, but has never produced verification of attendance. Laura C. also reported she was working on and off with a temporary employment agency. Steinau testified that if R.L.M. were to be placed with Laura C., he could live at Haven for Hope with her.

Steinau testified it was in R.L.M.'s best interest for Laura C.'s parental rights to be terminated. Steinau testified Laura C. is unable to meet R.L.M.'s emotional and physical needs now or in the future. Steinau explained Laura C. had admitted to using methamphetamines throughout the case and had not made the changes necessary to rehabilitate her life so that she could care for R.L.M. Steinau testified R.L.M. has no relationship with Laura C. Further, Steinau testified that Laura C. is unable to provide a safe, physical home environment for R.L.M. and that she lacks understanding of his needs.

According to Steinau, the permanent plan for R.L.M. is adoption by his paternal grandparents, with whom he currently lives. Steinau testified R.L.M. is doing well in that home. His grandparents are providing a safe, drug-free and stable environment, and they can meet his needs now and in the future.

Laura C. testified that she lives at Haven for Hope. She confirmed that she has had other CPS cases and that she has a drug problem. Laura C. testified that she has done some of the things required of her on her service plan. She completed a parenting class, she is working on her G.E.D., she has been seeing a therapist, and she began drug treatment. In the Summer of 2017, however, she became stressed and relapsed. As a result, she ended up in jail. After she got out of jail, she moved back to Haven for Hope.

During her testimony, Laura C. confirmed that she did not take all the drug tests she was asked to take. According to Laura C., she did not miss the drug tests because she was using drugs. Rather, she missed because she had either received late notice from the Department or the test conflicted with her work schedule. Laura C. explained that in January 2018, she refused a hair follicle drug test because she was angry. She did not feel like the caseworkers were meeting her halfway on the drug testing. Laura C. admitted that in December 2017, she tested positive for marijuana, but she denied she had used marijuana. She claimed she had tested positive because she had been in the same room with friends who were using marijuana.

Laura C. testified that she suffers from P.T.S.D. and is receiving counseling for her condition. She testified she is working with a temporary employment service. She does not have a car, so she takes the bus or walks. She asked the court to return R.L.M. to her. She testified that if R.L.M. was returned to her, he could live with her at Haven for Hope.

In looking at all the evidence in the light most favorable to the trial court's finding, we hold that the trial court could have reasonably formed a firm belief or conviction that termination of Laura C.'s parental rights was in R.L.M.'s best interest. *See In re J.O.A.*, 283 S.W.3d at 344. There was evidence presented that Laura C. had taken illegal drugs during her pregnancy with R.L.M. even though she had previously given birth to other children who had tested positive for drugs and knew the harmful effects of taking such drugs while pregnant. There was evidence that Laura C.

had not stopped taking illegal drugs during the pendency of this case and had not addressed her substance abuse problems or changed her behavior with respect to illegal drug use. There was evidence that R.L.M. suffered developmental problems and that Laura C. was incapable of meeting R.L.M.'s needs or providing a stable home for R.L.M. In contrast, R.L.M.'s current placement was meeting his needs and providing him with a safe and stable environment. R.L.M. was thriving in his current placement and the long-term plan was adoption. Thus, we hold the evidence is legally sufficient to support the trial court's best-interest finding.

With respect to factual sufficiency of the evidence, Laura C. points to evidence that she is halfway through her current outpatient treatment program and that she is currently attending N.A. classes, and meeting with a therapist. However, in considering the entire record, including any disputed evidence, we conclude the evidence is factually sufficient to support the trial court's finding that termination of Laura C.'s parental rights is in her child's best interest. *See id.*

We therefore affirm the trial court's order terminating Laura C.'s parental rights.

Karen Angelini, Justice